## UNION STATE BANK & TRUST CO. v. NORTHWESTERN LIFE INS. CO.
### No. 6184.

Circuit Court of Appeals, Fifth Circuit.

Feb. 8, 1932.

Asher R. Smith, Yale Hicks, and T. C. Mann, all of Laredo, Tex., and Lemuel H. Doty, of New Orleans, La., and Laredo, Tex., for appellant.

W. R. Blackshear and Gordon Gibson, both of Laredo, Tex., for appellee.

Before BRYAN, FOSTER and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, as administrator of the estate of Edouard Raymond, brought suit to recover on a policy of insurance on the life of said decedent, alleged to have been issued by appellee. Appellee defended on the ground that the policy had not been delivered during the lifetime and good health of the insured, and that the first premium had not been paid. At the close of the evidence, a verdict was directed for appellee. Error is assigned to that action of the court.

The following facts appear from the record: On May 26, 1928, Raymond made application for a policy of life insurance for $10,000, the semiannual premium of which was $246.86. The policy was issued and sent to Thorp, the state manager for the company at Dallas, Tex. The application signed by Raymond, made a part of the policy by the terms of the contract, contained this clause: "There shall be no contract of insurance until a policy shall have been delivered to me and the first premium paid to said company, or its duly authorized agent, during my life time and good health."

The policy contained this clause: "Only the President or Secretary has power on behalf of the Company (and then only in writing) to make or modify this or any Contract of Insurance, or to extend the time for paying any premium, and the company shall not be bound by any promise or representation heretofore or hereafter given by any agent or person other than the above."

Thorp sent the policy to Santa Cruz, general agent of the company at San Antonio, for delivery and collection of the first premium. Santa Cruz made efforts to deliver the policy, but was unable to do so because Raymond was absent in California. He returned it to Thorp on July 25, 1928. Thereafter Raymond wrote the following letter to Thorp:

"San Antonio, Texas, Aug. 2nd, 1928.
"Mr. Ben Thorp, Dallas, Texas.
"Dear Sir: Having just returned from California and meeting Mr. Santacruz on the street, he spoke to me of the policy I have with your company.
"I am on my way to New York to close up a very large deal and will return in about thirty days.
"Sorry I cannot take this up at the present moment, but on my return I will do so.

"If this is agreeable with you, hold the policy at your office and I will call for it. Otherwise, please advise me by letter—410 Kings Court, this city.

"Yours truly,

"Edouard Raymond, M. E.

"P. N. Mr. Santacruz has not received any payment from me as yet."

To this Thorp replied:

"August 14th, 1928.

"Mr. Edward Raymond, 410 Kings Court, San Antonio, Texas.

"Dear Mr. Raymond: I have your letter of recent date with reference to a policy that you have outstanding. I sincerely hope you will be able to make a remittance for the policy not later than the latter part of August. If you had given Mr. Santacruz a note or something in the way of a settlement so we could handle it, we would be glad to consider the matter for you but the Company does not like to have these matters outstanding as this is at this time with no settlement or anything made, and it is not to your interest to have it outstanding, so please let me hear from you not later than August 30th in order that we may give consideration to the matter of holding the policy further.

"Trusting that you will appreciate your position in the matter and that we may hear from you as to your wishes by return mail, I beg to remain,

"Yours very truly,

"[Signed]     Ben Thorp, State Manager."

Thorp testified that he went to San Antonio and had an interview with Raymond, at which Schultze, a soliciting agent for the company, was present. The date of this interview is indefinite. Thorp testified it was more than 60 days and perhaps 90 days after the date of the policy.

A clause in the policy provided for reinstatement after default in the payment of any renewal premium upon the insured furnishing evidence of insurability satisfactory to the company. The rules of the company required a certificate of good health from the insured before delivering a policy, after it had been issued more than 60 days. Thorp testified he asked Raymond to sign a health certificate, but Raymond refused to do so, refused to make any payment of the premium, and said he would not have the policy if it was given to him. Schultze corroborated this. Schultze was well acquainted with Raymond, and Thorp left the policy with him in the hope that he would ultimately induce Raymond to accept it. Schultze was unable to do so, and returned the policy to Thorp on October 26, 1928. Thorp marked the policy "canceled" on his records, and instructed his bookkeeper to return it to the home office. Instead of doing so, she put it in the home office file, where it remained in Thorp's possession until after Raymond's death. The policy was dated May 26, 1928. If it had been in force, the second premium was due on November 26, but a clause in the policy provided for 30 days' grace for the payment of premiums. This extended the due date to December 26th. Before November 26th, the home office sent Raymond a printed notice of premium due, and after November 26th sent him a printed second notice to the same effect. Both of these notices contained this clause:

"The sending of this Notice by the Company shall not be held to waive any forfeiture or lapse of the policy, as sending this notice is a routine duty of a clerk and is not a representation that the policy remains in force.

"G. Storz, President."

On December 11th the following letter was sent to Raymond:

"Omaha, Nebraska, December 11, 1928.

"Mr. Edouard Raymond, 107 Isleta, San Antonio, Texas.

"Dear Sir: We have not received your premium deposit of $246.80 on your Northwestern Life Policy No. 7858.

"Our business is to serve our Policyholders, by providing their Security and Protection, so we do not want your policy to lapse through any fault of ours. Thus this warning:

"At Midnight of December 26th your policy will lapse unless the premium due is received in this office before that time.

"If you are availing yourself of the general provision of our policies which permits thirty days of grace in payment of premiums, we are very happy to have you use that service. But—

"If for any other reason, you have delayed the payment of this premium, let us know immediately for we may be able to help you to overcome your difficulty. (Just use the reverse of this letter for your reply).

"Very truly yours,

"W. Ralph Jones, Manager, Policyholders Service Dept."

Jones, who signed the letter, testified it was a form letter sent out in the usual course of business to all delinquent policyholders, and he signed it as a matter of routine without making any inquiry as to the facts. He further testified the premium notices were sent by a clerk pursuant to a memorandum

card filed in a tickler system without any further inquiry.

Raymond died on December 7th. The premium was never paid to the company. After his death, Mr. Asher R. Smith, an attorney representing the administrator, investigated the facts in connection with the policy. He testified that in the course of doing so he called upon Thorp. He knew at that time that the company claimed that Raymond had made no payment or tendered any payment to the company or its authorized agent, and that the policy had not been delivered. He testified that in the course of the conversation Thorp told him that he had paid the premium for Raymond, and, if he recovered on the policy, he wanted it refunded, and that Thorp also advised him that he would never win the case. This last he believed was said in a jocular way. Thorp denied that he had ever told Smith that he had paid the premium for Raymond.

Briefly stated, it is the contention of appellant that the above evidence was sufficient to go to the jury as tending to establish that Raymond had accepted the policy; that its retention by Thorp until after Raymond's death was a constructive delivery of the policy; that the first premium had been paid or had been waived by the company; that appellant was estopped to deny that the policy was in force.

Under the terms of the policy, it was necessary to put it in force that it be delivered and the premium paid. Of course, there could be a constructive delivery, and credit could be given for the premium, but both of these conditions depended upon an agreement between the parties. Under the clause of the policy above quoted, that agreement could only be made on behalf of the company by the president or secretary, but, in view of the facts, that becomes comparatively unimportant. Appellant relied upon the correspondence between Raymond and Thorp and the fact that the policy was retained by Thorp as establishing such an agreement.

■ The construction of the documentary evidence was for the court, and not a matter to be submitted to the jury. Hamilton v. Liverpool, etc., Ins. Co., 136 U. S. 242, 10 S. Ct. 945, 34 L. Ed. 419. The only reasonable construction that could be given to Raymond's letter is that he promised to accept the policy at the end of 30 days. He did not accept it at once, and did not promise to pay the premium. Thorp's letter goes no further than to indicate that he would hold the policy until August 30th and then deliver it, provided Raymond paid the premium. But, whatever may be the effect of these letters, they were nullified by the subsequent conversation between Raymond and Thorp. It is also plain that the retention of the policy by Thorp was the result of a mere clerical error and not with any intention to hold it for account of Raymond, with the idea that it was in force.

It is unnecessary to decide the question of veracity between Thorp and Smith regarding Smith's testimony that Thorp had told him he had paid the premium. There is no doubt that the premium was never paid by any one to the company. Neither of these witnesses is otherwise impeached, and Smith's testimony was insufficient to overcome the denial by Thorp that he had made the statement.

■ Appellant has failed to show constructive delivery, actual payment of the premium, or credit given therefor.

■■ An insurance company may waive any provision of the policy inserted for its benefit and may be estopped to deny that it has done so, provided the agents doing the acts relied upon to sustain estoppel are authorized to make the waiver or the company has ratified their action, with knowledge of the facts, and the insured is induced to rely upon the waiver. Globe Mut. L. Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387; Northern Assurance Co. v. Grand View Bldg. Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213. Those conditions are not shown by the facts in this case. The premium notices themselves advised the insured that they were not to be construed as waiving any lapse of the policy. The letter of December 11th mailed after Raymond's death, without any knowledge of that fact on the part of the insurance company, could have no effect as a waiver. Furthermore, by the plain terms of the contract, none of the clerks or agents of the company, except the president and secretary, had any authority to create an estoppel such as is asserted. Aside from that, no act of the company or its agents or employees was prejudicial to the insured or induced him to act to his disadvantage.

The plea of estoppel finds no support in the record. It was not error to direct a verdict for appellee.

Affirmed.